Pennsylvania Power & Light Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent; Allegheny Electric Cooperative, Inc., Intervening Respondent.

Argued February 7, 1979, before President Judge Bowman and Judges Crumlish, Jr., Mencer, Blatt, DiSalle, Craig and MacPhail. Judges Wilkinson, Jr. and Rogers did not participate.

*William E. Zeiter*, with him *Morgan, Lewis & Bockius*, and *Vincent Butler*, for petitioner.

*Allison K. Turner*, Assistant Counsel, with her *Larry M. Smukler*, Assistant Counsel, *Shirley Rae*

*Don,* Assistant Counsel, and *Kathleen Herzog Larkin,* Chief Counsel, for respondent.

*William E. Mowatt,* for intervening respondent.

OPINION BY JUDGE MENCER, June 6, 1979:

Pennsylvania Power & Light Company (PP & L) has appealed an order of the Public Utility Commission requiring the filing of maps pursuant to Section 4(c) of the Retail Electric Supplier Unincorporated Area Certified Territory Act (Act), Act of July 30, 1975, P.L. 113, 15 P.S. §3280(c). We affirm.

The first sentence of Section 4(c) requires that, within a time period specified by the Commission,[1] *"each* retail electric supplier shall file with the commission a map or maps showing *all* of its existing distribution lines as of the effective date of this act." (Emphasis added.) "Retail electric supplier" is defined in Section 2 of the Act, 15 P.S. §3278, as *"any* person, firm, corporation, association or cooperative corporation . . . engaged in the furnishing of retail electric service." (Emphasis added.) PP & L has not denied that it is a firm, corporation, or association engaged in the furnishing of retail electric service. Thus, as a retail electric supplier, PP & L is clearly subject to the unambiguous mandate of Section 4(c).

On August 11, 1976, the Commission, pursuant to its authority under Section 4(c) and under Section 8, 15 P.S. §3284, entered an order nisi requiring the maps to be filed on or before March 30, 1977.[2] The Commission did not deem it necessary for its purposes to know

---

[1] Section 4(c) set an initial deadline of July 30, 1976 but authorized the Commission to extend the time.

[2] The Commission also specified the manner in which the maps were to be prepared and presented, *e.g.,* using black ink on United States Geological Survey quadrangles. PP & L has not objected to any of these directives.

the location of distribution lines located entirely within the service territory of a single retail electric supplier,[3] and it therefore ordered that the maps filed show only distribution lines located on the peripheries of service territories, *i.e.*, where electric utilities adjoin other electric utilities, where electric utilities adjoin electric cooperative corporations, and where electric cooperative corporations adjoin other electric cooperatives. The fact that the Commission apparently ignored the statutory requirement that *all* distribution lines be shown has not been raised by any of the parties to this case.

PP & L filed timely exceptions to the Commission's order and was granted a hearing before an administrative law judge. Based on the recommendation of

---

[3] The second sentence of Section 4(c) requires the Commission, using the filed maps, to prepare, or cause to be prepared, maps which show "the boundaries of the certified territory of each retail electric supplier as established under [Section 4] subsection (b). . . ." Section 4(b) provides as follows:

> (b) Except as otherwise provided in this section, the boundaries of the certified territory of each retail electric supplier in any unincorporated area are hereby set as a line or lines substantially equidistant between its existing distribution lines and the nearest existing distribution lines of any other retail electric supplier in every direction, with the result that there is hereby certified to each retail electric supplier such unincorporated area which in its entirety is located substantially in closer proximity to one of its existing distribution lines than the nearest existing distribution line of any other retail electric supplier.

Although this section purports to "hereby set" certain boundaries, the location of the boundaries will not be established with any degree of certainty until the Commission prepares its boundary maps pursuant to the second sentence of Section 4(c). Even then, retail electric suppliers can challenge the accuracy of the Commission's maps under Section 4(e), 15 P.S. §3280(e), and the Commission is further authorized by Section 4(d), 15 P.S. §3280(d), to deviate from the boundaries "set" in Section 4(b) if the purposes of the Act so require.

the law judge, the Commission dismissed PP & L's exceptions and affirmed its order nisi.[4] This appeal followed.

PP & L's sole objection to the order of the Commission is that it required that the maps filed pursuant to Section 4(c) show distribution lines where two public electric utilities adjoin. It is PP & L's contention that the Commission should have ordered that the maps show only those lines where a public utility adjoins an electric cooperative, or where two electric cooperatives adjoin. It is apparent that PP & L, along with the Commission, has ignored the clear mandate of Section 4(c) that *all* distribution lines be shown, regardless of their location.

In what is in reality an attempt to have this Court render an advisory opinion on the meaning and constitutionality of other provisions of the Act, PP & L argues that the Act was not intended to redefine the boundaries between two public utilities but was intended only to establish boundaries where public utilities adjoin electric cooperatives and where electric cooperatives adjoin other electric cooperatives. That issue is not before us, since the Commission's order did not purport to redefine or establish any boundaries;[5] the order was merely intended to implement the clear statutory mandate that maps be filed.

We also note that PP & L does not even suggest how the words of the Act, applicable without distinction to all retail electric suppliers as defined in Section 2, can be interpreted to support its "construction" of the Act. Rather, PP & L, in effect, argues that the Act *as written* may operate so as to violate the Pennsyl-

---

[4] The Commission did modify its order nisi in some respects, but these modifications are not at issue in this case.

[5] The Commission recommended, but did not require, that in certain instances retail electric suppliers agree on the location of their boundaries and file a duplicate map showing the boundaries.

vania and United States Constitutions.[6] PP & L is specifically arguing that the Act is severable as to "circumstances," *see* the Statutory Construction Act of 1972, 1 Pa.C.S. §1925, *i.e.,* that the purposes of the Act can be accomplished by applying it as written under circumstances where such application would be constitutional but not applying it under circumstances where the result would be unconstitutional. *Id.*[7] However, the severability issue is reached only where the application of the provisions of a statute to a particular set of circumstances has been held to be invalid. *Id.* PP & L does not even contend that its constitutional rights have been violated by the Commission's order requiring it to submit maps pursuant to Section 4(c), and we have no occasion to address the constitution-

---

[6] PP & L argues that the Act will operate to compel a public utility to extend its service into an area which it has not undertaken or professed to serve and that this would be tantamount to an appropriation of private property without just compensation. Whether or not the Act will so operate cannot be ascertained until the boundaries are actually established by the Commission. In addition, we fail to see how adoption of PP & L's "construction" of the Act as establishing boundaries only between public utilities and electric cooperatives would eliminate the problem which PP & L perceives.

[7] The Statutory Construction Act of 1972, 1 Pa.C.S. §1925, provides as follows:

The provisions of every statute shall be severable. *If any provision of any statute or the application thereof to any person or circumstance is held invalid,* the remainder of the statute, and the application of such provision to other persons or *circumstances,* shall not be affected thereby, unless the court finds that the valid provisions of the statutes are so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

ality of any other section of the Act as applied to any hypothetical set of facts.

## ORDER

AND Now, this 6th day of June, 1979, the order of the Public Utility Commission, adopted on November 23, 1977 and entered on December 2, 1977, is hereby affirmed.

---

DISSENTING OPINION BY JUDGE DISALLE:

I must respectfully dissent. The majority opinion orders a result which I feel places an unfair and undue burden upon PP & L and ultimately the consumer. The uncontradicted evidence in the record indicates that it would be expensive, time consuming and technically difficult for the utility to file the maps requested by the PUC. PP & L's expert witness testified that it, would cost approximately $300,000 to prepare the maps and to establish equidistant boundary lines and $200,000 to revise PP & L's family of maps to be consistent with the new maps. The need to conduct surveys to determine the field location of equidistant boundary lines would generate additional costs.

The evidence also indicates that approximately 90% of PP & L's service territory borders definite, well known geographical and political areas. Replacing these certain, well defined boundaries with new and irregular ones would cause confusion as to which utility serves a particular customer, delays in service, and increased costs. Insofar as the obvious disadvantages of inconvenience, inefficiency and less effective service heavily outweigh any possible benefits, the PUC's order seems wholly inimicable to the public interest.

Nor am I persuaded by the majority's statement that "the Commission's order did not purport to re-

define or establish any boundaries; the order was merely intended to implement the clear statutory mandate that maps be filed.'' (footnote omitted.) Given the language of Sections 4(b) and (c), partially quoted by the majority in footnote 3, it is clear that the PUC intends to reestablish boundaries pursuant to Section 4 and has requested maps of distribution lines with that end in mind.

I dissent.